[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On August 10, 1994 Devcon-Torrington LLC submitted to the Planning and Zoning Commission of the City of Torrington materials constituting an application for site plan approval seeking approval to construct a 200,000 square foot "retail center" on land located at the Southeast corner of route 202 and route 183 (Assessor's Map #144-3-30/35) which land comprises approximately 33.5 acres owned by A. James Zeller in the Town of Torrington. Said application was submitted under Section 8.4 of the Torrington Zoning Regulations, the regulation pertaining to site plan reviews and approvals.
At its meeting on October 12, 1994, the Commission approved said site plan application. Said approval was granted without a public hearing, pursuant to section 8.4 of the Torrington Zoning Regulations. Notice of said decision was published in the Register/Citizen newspaper on October 20, 1994.
The plaintiffs, Joseph L. Consolini, Elizabeth J. Consolini, Conio C. Lopardo and Marlene R. Lopardo (hereafter Consolini) are persons owning land which abuts or is within a radius of one hundred feet (100') of the land involved in the above referenced decision, and therefore are aggrieved by said decision approving said application. Conn. Gen. Stat. § 8-8 (1).
They claim that the Commission's actions in approving said site plan application were illegal, arbitrary, capricious, unreasonable and in abuse of the discretion vested in the Commission.
In 1988 the developer was granted a zone change to C.I.R. for a larger parcel for the development of a 300,000 square foot CT Page 6585 enclosed shopping mall. Consolini appealed that decision to this court arguing that Torrington failed to consider the traffic impact and the impact on the wetlands. That appeal was dismissed.Consolini, et al. v. Planning and Zoning Commission of City ofTorrington, et al, Docket No. CV88-0048806S decided 9/17/90 (Reifberg, J.).
Consolini is correct that in 1990 the developer attempted to downsize the project to a 200,000 square foot retail center. Consolini is also correct that Torrington then required the developer to amend the C.I.R. zone in accordance with the zoning regulations because of the significant change — a one-third reduction in the size of the project. It is also true that there was no modification as to traffic generation because the traffic generation for a 200,000 square foot retail center could not be more significant than that for a 300,000 square foot retail center. In addition that site was already zoned for retail use.
Again, in 1990 the developer went to the Inland-Wetlands Commission to determine if it needed a new permit for its downscaled project or if its existing permits would 'allow it to build the downscaled project. The Inlands-Wetlands Commission decided no new permits were required. Consolini appealed that decision to this court which dismissed their appeal. That decision was affirmed in the Appellate Court. Consolini et al v.Wetlands Commission of the City of Torrington, 29 Conn. App. 12
(1992).
Consolini also indicates that there was some indication that this development might include a Wal-Mart and that somehow would make a difference in Torrington's decision. That was mere speculation. Devcon clearly indicated that no tenants for the site had been determined. (Record Item 32, page 21) Members of the public speculated that the tenant for the site was Wal-Mart. (Record Item 32, pages 18-21.) Who the prospective tenants might be is irrelevant. The zoning regulations do not differentiate between retail uses. The regulations could not say that retail use is allowed except for Wal-Mart or Filene's or Stop and Shop.
 I
§ 5.5 of Torrington Zoning Regulations
§ 5.5 states: CT Page 6586
5.5 Commercial Industrial Restricted
 No additional Commercial and Industrial Restricted (C.I.R.) zoning districts shall be allowed. The C.I.R. districts in existence at the time of the passage of this regulation shall remain. Any change to the development plans approved as part of the adoption of a C.I.R. district shall be brought before the Planning and Zoning Commission. Any change must conform to the C.I.R. regulations in effect at the time of the C.I.R. district's adoption. If the Commission determines the changes are significant the Commission shall require the applicant to apply for approval of the changes. The application for the changes to the development plans shall be subject to the regulations that apply for a change to the zoning map.
Consolini is claiming that Torrington did not comply with § 5.5 of its Zoning Regulations. It is undisputed that the C.I.R. zone in question was in existence when this regulation was adopted. The C.I.R. zone was established in 1988 and amended in 1990. The zoning regulation under which the zone was created and amended was identical. That was § 225 of the then zoning regulations.
Section 225 — C.I.R. Zone
Restricted Commercial and Industrial.
 Restricted commercial and industrial zones may be designated on the zoning map by petition in accordance with procedures outlined in the paragraphs:
 A petition for a restricted commercial and industrial zone, whether or not in a location designated on the zoning map, shall be submitted to the Planning and Zoning Commission by the owner of the land involved, or by the holder of an option to purchase, accompanied by two or more copies of a complete development plan, showing existing topography and proposed grading, extent, location and type of proposed, structures, uses and open area. Land to be included in such a zone must comprise at least five (5) acres.
 In addition to any notice of hearing provided by law, or in this ordinance, notice shall be given by publication in a CT Page 6587 newspaper of general circulation in the city.
 After a public hearing the Planning and Zoning Commission may approve, disapprove or approve with modifications the establishment of the zone. No development plan shall be approved which is inconsistent with the public welfare of which impairs the integrity of this ordinance or which does not fully safeguard the appropriate use of the land in the immediate neighborhood.
 The use permitted in the restricted commercial and industrial zone may be any business or industrial use permitted in Section 215.
The height and area regulations shall be as follows:
Maximum height for all structures — 2 stories or 35 feet.
 All buildings shall be at least 200 feet distant from the boundary line of any residential zone.
 Off street parking area shall be in accordance with the requirements of section 525. Any open space may be used to satisfy these requirements but no parking is permitted within 50 feet of a residential zone boundary. Parking areas shall be hard surfaced, any lighting shall be reflected away from residential zones.
 Screening of parked or stored vehicles and landscaping of the open space adjoining residential uses may be required, and other conditions may be imposed which will fully protect such uses.
 Action by the Planning and Zoning Commission establishing a restricted commercial zone shall be designated on the zoning map. No building or use permit shall be issued in any such zone except in accordance with the development plan as approved or as amended by the procedure outlined in this section. If such permit is not used within a year from the date of issue, it shall be void unless on written request of the permittee an extension is granted by the Planning and Zoning Commission.
A complete development plan is different form a site plan which is a document of far greater specificity. The change of zone CT Page 6588 development plan and a site plan are two separate and distinct items. The development plan which becomes a part of the zone and its regulations is a conceptual plan showing the general location of buildings and improvements on the site. It need not be specific as the site plan approval process comes later and is more specific in nature.
When deciding a site plan application, the Commission acts in its ministerial capacity rather than its legislative capacity.Allied Plywood Inc. v. Planning and Zoning Commission of Town ofSouth Windsor, 2 Conn. App. 506 (1984), cert. denied, 194 Conn. 808. The Commission has no independent discretion beyond determining whether the plan complies with the applicable regulations. Kosinski v. Lawlor, 177 Conn. 426 (1979).
Consolini's reliance upon and interpretation of § 5.5 is misplaced. Consolini has interpreted § 5.5 to mean that for any change to the development plan, the applicant must apply for approval of those changes through a formal application for a change to the zoning regulations. § 5.5 requires that any change be brought to the Commission. It does not specify how those changes need to be brought to the Commission.
Devcon brought the minor changes it sought to the development plan to Torrington through its site plan application. As site plan approval was necessary for, Devcon to begin its development, it was the most convenient forum for it to do so. Torrington was not required to make a finding that the changes were insignificant. Only if Torrington found the changes to be significant was any kind of formal application required by § 5.5. Through its review process of Devcon's site plan, it is clear that Torrington found the changes that were proposed and agreed to were insignificant.
It is clear then that Torrington did not violate § 5.5 of its regulations in approving Devcon's site plan. Consolini is claiming that Devcon was required by § 5.5. to bring any changes to the development plan before Torrington and that it failed to do so. Devcon, in its site plan application did bring the changes it proposed before Torrington. (Record Item 1) § 5.5 does not prescribe how those changes must be brought before Torrington. Only if Torrington finds that the changes are significant must any type of formal application be filed regarding proposed changes. As previously discussed, bringing the minor modifications it sought to Torrington through its site plan application was the most prudent and convenient way to do so. CT Page 6589
Consolini next claims that Devcon's site plan application proposed a different use of the site. Devcon's application was for an approximately 200,000 square foot retail center. (Record Item 1) The 1990 approval was for a retail center of between 180,000 square feet and 200,000 square feet. (Record Item 31) Consolini's claim is that because Devcon's application shows part of the retail use as a grocery store that this is somehow different. As discussed earlier, Torrington's zoning regulations do not differentiate between different types of retail sales. Under Torrington's zoning regulations, retail is retail. As Devcon's application was for a retail center, its proposed use was the same as the 1990 approval.
Consolini claims that Devcon sought four (4) modifications to the approved development plan and as such it constituted a different development. Those four changes were:
i) The developer sought to increase the building area by including a 1,596 square foot area under a metal canopy. (Record, Item 31)
ii) The original approval required that each parking row include a landscaped island with a deciduous tree. The developer sought modification of this condition.
iii) The storm water detention system was drastically changed to consist of over a mile of underground, 6 foot in diameter piping, with a complex 2 year maintenance agreement. (Record, Item
iv) The developer sought to modify the landscaping conditions imposed in the original permits. (Record, Item 31)
Devcon did seek to increase the 200,000 square foot building size by adding a 1,596 square foot metal canopy. It was Devcon's position that should not be included in the building calculation. Torrington disagreed and its site plan approval limits the total buildings including the canopy to 200,000 square feet. (Record Item 31) Therefore, this proposed change does not constitute a different development. Even if it had been approved, the change would have been so minute as not to constitute a different development. The change would have been less than a one percent change in the building size. Clearly that is insignificant.
Conditions number ii and iv Consolini claims constitute a different development deal with landscaping requirements. The CT Page 6590 modifications sought by Devcon were not in the amount of landscaping sought but as to where some trees were to be located. The changes were sought because the position of some trees would interfere with lighting and drainage. Devcon merely proposed moving some trees. (Record Item 31) Again, as previously discussed, the development plan is more of a conceptual plan and the site plan is the more specific document. Consolini v. Planning and Zoning,
supra.
Condition number iii that Consolini claims constitutes a different development concerns the storm water detention system. The storm water detention system proposed by Devcon does differ from what was originally proposed to lessen the impact on the wetlands and the off-site drainage system. The changes are in keeping with good engineering practices which is one of the criteria Torrington must consider in deciding a site plan application. (Record Item 35) § 8.4.1 B which states:
 B. Site plans shall be approved, approved with conditions, approved subject to modification, or denied. A site plan may be modified or denied only:
 a. if it fails to comply with the requirements of these Zoning Regulations.
 b. if, in the case of a special exception or variance, the plan does not conform to the uses or conditions imposed as part of the special exception or variance; or
 c. if the location and design of all proposed sanitary sewer, storm drainage, water, electrical, natural gas and other utilities are not in keeping with good engineering practice.
As the proposed storm water drainage system has less of an impact, the change in the system is insignificant.
 II Traffic
Consolini is attempting to raise the issue of traffic. They claim that because of the proposed retail use of property i.e. a grocery store — that that is a change of the use which was approved in 1990. The 1990 approval was for a 200,000 square foot retail CT Page 6591 center. The 1994 site plan approval was for a 200,000 square foot retail center. The Torrington Zoning Regulations (Record Item 35) do not differentiate between different types of retail stores. The approval in 1990 was not subject to any restrictions regarding traffic generation. The approval was not for retail use limited to a certain level of traffic. The C.I.R. approved in 1990 allowed for the development of a 200,000 square foot retail center. There was no condition regarding the amount of traffic that the retail center could generate. (Record Item 31).
Consolini further argues that Torrington illegally abdicated its responsibility for traffic to the State Traffic Commission. When a shopping center is proposed to be built, the person wishing to develop that center must apply to the State Traffic Commission for a permit.
§ 14-311 of the General Statute states:
 § 14-311. Open air theaters, shopping centers and certain other developments affecting state highway traffic.
 (a) No person, firm, corporation, state agency or municipal agency or combination thereof shall build, expand, establish or operate any open air theater, shopping center or other development generating large volumes of traffic, having an exit or entrance on, or abutting or adjoining, any state highway traffic within this state until such person or agency has procured form the state traffic commission a certificate that the operation thereof will not imperil the safety of the public.
Consolini is attempting to again challenge the 1988 — 1990 C.I.R. approvals. The time for any such challenge has passed and in fact their arguments were rejected in this court. Consolini,
supra. Devcon's site plan application was before the Torrington Zoning Commission in 1994. (Record Item 1) If that application met the zoning requirements it must be approved. (Record Item 35, § 8.4) At the site plan stage, traffic is not a consideration. (Record, Item 31, Comment 8 pp. 2-3.)
 III Inland Wetlands
CT Page 6592
The last issue which Consolini raises deals with the applicant's Inland-Wetlands permits. Consolini claims that Devcon has no Inland-Wetlands permits for this project and therefore Torrington's site plan approval was wrong. Consolini is correct that Inland-Wetlands permits were issued in 1988 and is also correct that when the scaled down plan was approved in 1990 that no new permits were obtained. The Inland-Wetlands Commission in 1990 ascertained that no new permit was required. Consolini appealed that decision which appeal this court dismissed. Upon further appeal the Appellate Court affirmed that decision. Consolini v.Inland-Wetlands Commission, 29 Conn. App. 12 (1992). Record Item 4 indicates that the Inland-Wetlands Commission was aware of Devcon's plans and in fact discussed them. The Inland-Wetlands Commission in transferring and extending the permits acted properly. Torrington had its report when it acted upon the site plan. Consolini's argument is without merit and even if it had merit, it should have been made before the Inland-Wetlands Commission. See Consolini v. Inland-Wetlands Commission, supra.
 IV
The plaintiffs' appeal can only be sustained upon a finding that Torrington's decision was unreasonable, arbitrary or illegal.Schwartz v. Planning and Zoning Commission, 208 Conn. 146 (1988). A court may not substitute its judgment for that of a commission and must not disturb a decision as long as honest judgment has been reasonably and fairly exercised. Molic v. Zoning Board of Appeals,18 Conn. App. 159 (1989). Baron v. Planning and Zoning Commission,22 Conn. App. 255 (1990).
For the reasons stated, the court finds that the plaintiffs have failed to sustain their burden to show an abuse of discretion on the part of the defendant Commission and therefore the appeal is dismissed.
PICKETT, J.